UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCELINA BROWN and LILI ECHEVERRIA, <br><br> Plaintiffs, <br><br> v. <br><br> LUXOTTICA RETAIL NORTH AMERICA INC., LENSCRAFTERS, INC., THE UNITED SHOE CORPORATION, and LUXOTTICA GROUP, S.P.A., <br><br> Defendants. | Case No. 09 C 7816 <br><br> Judge Joan B. Gottschall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Marcelina Brown and Lili Echeverria, have sued defendants, Lenscrafters, Inc., Luxottica Retail North America Inc., The United States Shoe Corporation and Luxottica Group, S.p.A. Plaintiffs' First Amended Class Action Complaint pleads four counts: Count I alleges a violation of the Illinois Minimum Wage Law; Count II alleges a violation of the Illinois Wage Payment and Collection Act; Count III alleges unjust enrichment; and Count IV alleges a violation of the Fair Labor Standards Act ("FLSA"). Plaintiffs seek to represent "themselves and others who currently work, or who worked as salaried managers, including but not limited to salaried retail managers, salaried lab managers and/or salaried general managers or other positions performing similar responsibilities for the Defendants and who do not meet the tests for exemption in the State of Illinois at any time during the three-year period immediately preceding the filing of the original complaint." (Compl. ¶3.)

1

Defendants have moved to compel one of the named plaintiffs, Marcelina Brown, to arbitrate her claims on an individual basis pursuant to the parties' Dispute Resolution Agreement, as contained in an employee handbook given to Brown, and to stay these proceedings as to plaintiff Brown pending arbitration. Defendants' motion is not directed to plaintiff Echeverria or to the unnamed members of the class. Two defendants, Luxottica Group, S.p.A. and United States Shoe Corporation, also move to dismiss as to them for lack of personal jurisdiction. For the reasons set forth below, defendants' motions are granted.

## I. MOTION TO COMPEL ARBITRATION

### A. Arbitration Agreement

Defendants assert that on or about October 2, 2006, while Brown was employed by Luxottica Retail North America Inc. and in consideration for her continued employment, Brown entered into a Dispute Resolution Agreement ("Agreement") with defendants. The Agreement, which is attached as an exhibit to plaintiffs' opposition, is contained in a 51-page employee handbook, called the Associate Guide. The Dispute Resolution Agreement begins on page 27 and consists of 5 pages. In a section entitled "What Exactly is Covered," the Agreement states as follows:

> You and the Company each agree that, no matter in what capacity, neither you nor the Company will (1) file (or join, participate or intervene in) against the other party any lawsuit or court case that relates in any way to your employment with the Company or (2) file (or join, participate or intervene in) a class-based lawsuit, court case or arbitration (including any collective or representative arbitration claim). . . .
>
> The Company expressly does not agree to arbitrate any claim on a class, collective or representative basis and all claims to arbitration must be brought in the name of an individual person and must proceed on an individual basis (non-class, non-representative

> basis). Claims of two or more persons may not be joined or consolidated in the same arbitration. . . .
>
> The Arbitration portion of the Dispute Resolution Agreement is intended to cover all legal disputes that you could otherwise file in court. That includes, but is not limited to, all claims brought under federal, state and local statutory or common law including . . . the Fair Labor Standards Act {and] any related or similar state laws . . . .

(Doc. 36 Ex. A at 28-29.)

The Agreement provides that if the employee initiates the arbitration, the employee will be required to pay a filing fee to the AAA "up to the amount required to file a lawsuit in your jurisdiction asserting the same claims. If the AAA filing fee is greater than that amount, the Company will pay the difference." (*Id.* at 30.) Further, the Company "will pay the entire fee of the arbitrator for his or her services and any associated costs incurred by the arbitrator or the arbitration service provider." (*Id.*) The Agreement further states that, if authorized by applicable law, the arbitrator could require the employee to pay the Company's attorney's fees or the Company to pay the employee's fees. (*Id.*) Presumably by "applicable law," the Agreement contemplates that whatever fee-shifting would be available in a lawsuit would also be available to the arbitrator; the parties have not suggested that this provision has any different meaning.

While Brown's agreement to the terms of the handbook, including the Dispute Resolution Agreement, was a condition of her continued employment, and plaintiffs assert that the Agreement was offered on a take-it-or-leave-it basis, the arbitration provision is not mandatory. Rather, the Agreement provides that

3

"Associates may opt out of the Dispute Resolution Agreement within 30 days of receipt of this agreement." An Opt-Out form is attached to the Agreement, and the Handbook provides Opt-Out directions.

**B.     Analysis**

The interpretation of an arbitration agreement is generally a matter of state law. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct.1758, 1773 (2010). However, the Federal Arbitration Act ("FAA"), 9 U.S.C.§ 1 et seq., imposes certain important rules, including that arbitration "is a matter of consent, not coercion." *Id.* (citation omitted). The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. *Id.* The FAA embodies a strong federal policy in favor of arbitration. *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556-57 (7th Cir. 2003). A class action waiver in an otherwise enforceable agreement must be enforced. *Id.* at 559.

Plaintiffs oppose the motion to compel arbitration, arguing that the Dispute Resolution Agreement is unconscionable and unenforceable. Under Illinois law, a finding of unconscionability may be based on either procedural or substantive unconscionability or a combination of the two. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006).

Procedural unconscionability refers to a situation where the terms of a contract are so difficult to find or read that a plaintiff cannot be fairly said to have agreed to them. *Id.* at 264. The procedural unconscionability analysis takes into account the disparity in the parties' bargaining power, which also goes to each

4

party's ability meaningfully to contract. *Id.* Contracts of adhesion, meaning non-negotiable contracts which may include technical, difficult-to-understand language, "are a fact of modern life," and are not necessarily unenforceable. *Id.* at 266. *Accord Adkins v Labor Ready, Inc.*, 303 F.3d 496, 501-02 (4th Cir. 2002) (applying West Virginia law). However, the fact that an agreement fails to put a plaintiff on notice of certain costs she would sustain as a result of the arbitral forum is an indicia of procedural unconscionablility. *Kinkel*, 857 N.E.2d at 266.

Substantive unconscionability involves the actual fairness or unfairness of the terms of the agreement. *Id.* at 267. Where the cost of arbitration is so high compared to the expected recovery that arbitration cannot serve as a meaningful remedy, the agreement to arbitrate will be substantively unconscionable.

In *Kinkel*, plaintiff brought suit challenging a $150 early termination fee in her wireless agreement. The service agreement contained a mandatory arbitration clause prohibiting class actions. The appellate court held that the mandatory arbitration clause was enforceable (an issue which was not appealed), but the class action waiver was not. *Id.* at 254-57. The Illinois Supreme Court affirmed.

The *Kinkel* court held that the class arbitration waiver was both procedurally and substantively unconscionable. Plaintiff had no opportunity to reject the contract terms and no notice of the costs of arbitration.[1] In addition, the court looked to the size of plaintiff's claim, $150, and the fact that to litigate the

---

[1] The court noted that the degree of procedural unconscionability, alone, would not have invalidated the class action waiver. *Kinkel*, 857 N.E.2d at 265. However, the combination of procedural and substantive unconscionability made the provision unenforceable. *Id.* at 278.

5

claim individually, plaintiff would have to pay a $125 filing fee plus her attorney's fees. If class litigation were precluded, plaintiff could never be made whole in an individual arbitration. The claim was so small and the cost of vindicating it so high "that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy is as either the representative or a member of a class." *Id.* at 275.[2]

In this case, the agreement to arbitrate is not procedurally unconscionable. Plaintiffs contend that the Agreement is "buried" in the Associate Guide and lengthy, single-spaced, confusing, and written in a technical style that a reasonable worker could not understand. The Dispute Resolution Agreement is in part of the Associate Guide titled "Luxottica Retail Associate Agreements," appearing on page 27, and is listed as the second of the agreements. The Dispute Resolution Agreement itself occupies 5 pages and begins with the title "Dispute Resolution Agreement" in large, bold font. The Agreement is in regular font, with a dearth of legalese and, while, single-spaced, is easily readable. Page 29 lists a number of federal statutory claims that are subject to the Agreement, including the Fair Labor

---

[2]The Eleventh Circuit, applying the Georgia law of unconscionability, similarly held a class action waiver substantively unconscionable when, in a case challenging excessive cable franchise fees, an individual claim was worth approximately $10. Given the small size of an individual claim, a class action mechanism was essential to make a remedy realistic. "The cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great." *Dale v. Comcast Corp.,* 498 F.3d 1216, 1224 (11th Cir. 2007). This, coupled with the fact that state law precluded the awarding of fees and costs to plaintiffs unless bad faith were shown, meant that an individual subscriber would probably be unable to retain counsel. "Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims." *Id.*

Standards Act.

There is nothing hidden or buried about this Agreement, as long as an employee reads the Handbook. The court finds the Agreement clearly set off from the rest of the Handbook, written in easily readable type and about as plain as a legal agreement can be. The court has trouble understanding how an employee could miss the Agreement unless the employee chose not to read the Handbook. In the absence of fraud, the law does not protect persons who choose not to read documents given to them. *Morales v. Sun Constructors, Inc.,* 541 F.3d 218, 222 (3d Cir. 2008); *Walker v. Carnival Cruise Lines, Inc.,* 889 N.E.2d 687, 695-96 (Ill. App. Ct. 2008); *Hutchens v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 724 (N.D. Cal. 1996). A party to an agreement is charged with knowledge of and assent to the agreement signed. *Melena v. Anheuser-Busch, Inc.,* 847 N.E.2d 99, 108 (Ill. 2006). Arbitration agreements are enforceable on the same basis as other contracts. *Id.* at 107.

Plaintiffs claim they had no choice but to accept the Handbook containing the Agreement. However, the Agreement contains a clearly-expressed Opt-Out option. Employees are given 30 days to exercise their Opt-Out rights and are given a form to use to exercise their Opt-Out rights. The penultimate paragraph of the Agreement is in bold face and states as follows:

> You should read the provisions of the Agreement carefully, as it provides that virtually any dispute related to you or your employment may be resolved only through binding arbitration. Arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding. If you do not wish to accept the binding arbitration

>provision contained in this Agreement, you may opt-out by
>notifying us in writing (on the form provided hereafter and called
>the Opt-Out Of Dispute Resolution Agreement) within 30 days of
>receipt of this Agreement. This written notice must be directed to
>and actually received by the Director of Associate Relations
>within the 30-day period. Failure to opt-out within the time
>provided will demonstrate your intention to be bound by the
>Agreement and specifically the arbitration provision contained
>herein.

(Doc. 36 Ex. A at 30.) Because of the Opt-Out option, the Agreement cannot be said to be foisted on employees on a take-it-or-leave-it basis, as is typical of contracts of adhesion.

Moreover, on the last page of the Handbook, which each employee is to sign acknowledging his or her receipt of the Handbook, there is a separate "Acknowledgment and Acceptance of Agreements." This provision, which the employee is also required to sign, states as follows:

>I acknowledge that I have received and read, and that I understand
>and agree to the terms of, the following Agreements as set forth in
>the Associate Guide: the Confidentiality Agreement; Dispute
>Resolution Agreement . . . .
>
>Except for the Dispute Resolution Agreement, from which I may
>opt-out by signing and returning the Opt-Out of Dispute
>Resolution Agreement form within 30 days of receipt, I
>acknowledge and agree that my employment with the Company is
>conditioned upon my acceptance of the terms of these
>contractually binding agreements. Absent the exercising of my
>right to opt-out of the Dispute Resolution Agreement, I agree also
>to be bound by its terms. I understand that the Agreements
>attached hereto replace and supercede all prior versions and I am
>bound by the most recent versions of the Agreements.

(*Id.* at 53.)

Nor is the Agreement substantively unconscionable. Plaintiffs point to a provision of the Agreement which states that, "the arbitrator could order you to pay the Company's attorney's

fees and costs under certain circumstances authorized by applicable law." (Doc. 36 Ex. A at 30.) However, the Agreement in this way merely requires the arbitrator to follow the law of fee-shifting. Nothing in the Agreement requires him or her to violate the law, and there is no basis for the assumption that he or she will do so. If such fee-shifting is prohibited by the FLSA, as plaintiffs claim it is, there is no reason to expect that an arbitrator will shift fees in violation of the law.

Despite the Seventh Circuit's clear directive that plaintiffs seeking to invalidate arbitration clauses must provide "individualized evidence that [they] likely will face prohibitive costs in the arbitration at issue and that [they are] financially incapable of meeting those costs," *Livingston,* 339 F.3d at 557, plaintiffs here provide little individualized evidence, and what they provide does not support their argument. Plaintiffs assert that Marcelina Brown has worked for defendants for more than 20 years, during which time she was paid a salary and deprived of overtime. Plaintiffs' assertion that "Attorney's fees and costs for this case can quickly escalate to six figures and vastly exceed Plaintiff's salary and ability to pay," not only fails to satisfy the Seventh Circuit's requirement of particularized evidence but also is unlikely to be true. While plaintiffs' assertion might aptly describe a class action, it is hard to see why a simple question of whether Brown was entitled to overtime, and the amount of overtime to which she was entitled, should require huge attorney's fees. And if plaintiff has in fact been deprived of overtime for 20 years, it is likely that her recovery will be sufficient to dwarf her costs of the arbitration. But whether this is true or not, plaintiffs have made no effort to quantify the size of their claims or the costs of vindicating them. There is thus no basis upon which the court can accept their argument.

It should be noted in addition that the Dispute Resolution Agreement contains various provisions to protect plaintiffs from excessive fees. The Company agrees to pay any filing fee in excess of the amount charged to file a civil case in the relevant jurisdiction unless the relevant jurisdiction requires the Company to pay more. (Doc. 36 Ex. A at 30.) And the Company agrees to pay the entire fee of the arbitrator. (*Id.*)

Plaintiffs make a conclusory policy argument that the Agreement contravenes public policy in that it "effectively prevent[s] aggrieved employees from seeking redress for serious wage violations." Plaintiffs cite *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), for the proposition that FLSA rights are not waivable. However, the arbitral limitations that concerned the Court in *Barrentine* are not present here: the special but limited competence of labor arbitrators, the limited remedies that the collective bargaining agreement might allow and the difference between the objectives of labor arbitration–to construe the collective bargaining agreement–and the statutory, non-contractual objectives of the FLSA.

Nothing in the FLSA precludes an agreement to arbitrate a FLSA claim, even when the arbitration agreement is part of an employee handbook and whether or not the employee signs the agreement or the handbook. *E.g., Pomposi v. Gamestop, Inc.*, Civil Action No. 3:09-cv-340 (VLB), 2010 WL 147196, *4-5 (D. Conn. Jan. 11, 2010); *Johnson v. Carmax, Inc.,* Action No. 3:10-CV-213, 2010 WL 2802478, *4 (E.D. Va. July 14, 2010)*; Marzek v. Mori Milk & Ice Cream Co.,* No. 01 C 6561, 2002 WL 226761, *3 (N.D. Ill. Feb. 13, 2002); *Adkins*, 303 F.3d at 506. If plaintiffs have located any case that supports their argument that arbitration of FSLA claims is against public policy, they have not cited it and the court has not found it.

The broad policy argument which plaintiffs build from *Barrentine*, that FLSA disputes

10

cannot be effectively arbitrated, has been repeatedly rejected by the federal courts. The Seventh Circuit in *Livingston* has made clear that, to succeed on an argument that the Dispute Resolution Agreement's class action waiver is unconscionable, considerable specific factual evidence is required. Little of such evidence is provided here.

## II. MOTION TO DISMISS

According to defendants, neither Luxottica Group, S.p.A. nor United States Shoe Corporation has the required minimum contacts with the state of Illinois which would permit this court to exercise personal jurisdiction over those entities. (*See* Doc. 23.) Defendants motion was filed March 2, 2010. (*Id.*) The court set a briefing schedule which required a response from plaintiffs by April 15, 2010. (Doc. 31.) Plaintiffs have never responded, so the court will interpret their silence as agreement with the defendants' arguments.

## III. CONCLUSION

The motion to compel arbitration of the Brown claim on an individual basis is granted. Plaintiff Brown's action is stayed. Motion by defendants Luxottica Group, S.p.A. and United States Shoe Corporation to dismiss for lack of personal jurisdiction is granted.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 29, 2010